[Criminal No. 888.   Filed April 8, 1940.]

[101 Pac. (2d) 196.]

DALE OREN BROUGH, Appellant, v. THE STATE OF ARIZONA, Respondent.

Miss S. V. Ross, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Respond-

ent, and Mr. Charles L. Ewing, County Attorney of Yavapai County, Associate Counsel.

ROSS, C. J.—From a conviction of grand larceny and an indeterminate sentence to the state prison for a term of not less than twenty-five years to life, Dale Oren Brough has appealed.

The one question for decision is whether the defendant was entitled to ten peremptory challenges or only seven in the impanelment of the jury. The trial court limited defendant to seven and he insists this was prejudicial error.

The information charges defendant with the crime of grand larceny of an automobile, which, under section 4757, Revised Code of 1928, is punishable by imprisonment in the state prison for not less than one nor more than ten years. The information also, as the law authorizes, sets forth that defendant had suffered two previous convictions in the courts of Arizona, one for burglary and one for attempted burglary, both punishable in the state prison, such punishment being, if the burglary was committed in the daytime not more than five years and if in the nighttime not less than one nor more than fifteen years. Sec. 4746, Id.

On his arraignment, defendant admitted the previous convictions and pleaded not guilty to the offense charged. The verdict was that he was guilty of grand larceny, but the jury made no findings as to previous convictions, the statute not requiring it when the defendant admits previous conviction. Sec. 5089, Id.

When a party has been informed against for a crime and the information alleges previous convictions, the punishment for the new crime is fixed by section 4898, Id., the material part of which reads:

"Defendant previously convicted, increased punishment. Every person who, having been convicted of

petit larceny or any offense punishable by imprisonment in the state prison, commits any crime after such conviction, is punishable therefor, as follows: If the offense of which such person is subsequently convicted is such that, upon a first conviction, an offender would be punishable by imprisonment in the state prison for any term exceeding five years, such person is punishable by imprisonment in the state prison not less than ten years; . . . The punishments herein prescribed must be substituted for those prescribed for a first offense if the previous conviction is charged in the indictment or information and found by the jury.''

It seems to be agreed that the sentence imposed is in accordance with section 5109, Id., which provides for indeterminate sentences.

We now revert to the question we are to decide. We look to the provisions of the law that fix the number of peremptory challenges a defendant charged with the commission of a crime is entitled to exercise. Section 5039, Id., reads:

''Peremptory challenge; number. A peremptory challenge may be taken by either party. It is an objection to a juror for which no reason need be given, but upon which the court shall exclude him. If the offense charged be punishable with death or imprisonment in the state prison for life, the state shall be entitled to seven and the defendant to ten peremptory challenges. On a trial for any other felony the state shall be entitled to five and the defendant to seven peremptory challenges, and on a trial for any other offense, the state and the defendant each shall be entitled to three peremptory challenges.''

This statute regulates the number of peremptory challenges by the magnitude of the penalty. The more severe the punishment, the greater the number of challenges, and where the punishment may be death or imprisonment for life, the defendant is given ten peremptory challenges; any other felony seven, etc.

In this case it was known to all parties, including the court, as soon as the information was presented

that if defendant was convicted thereunder his punishment would not be "for a first offense," but that he would be punished by a "substituted" punishment as one previously convicted as provided in section 4898, *supra.* It is true that the defendant was not charged with a new offense but facts were alleged in the information which the law provides if established shall enhance the punishment prescribed "for a first offense." This was as plainly evident as what his punishment would be if he were being tried for a first offense. In such case he would have been allowed seven peremptory challenges. Because the information charged a previous conviction, the severer punishment was "substituted for those prescribed for a first offense," and such substituted punishment might be for life.

██ For the reason that our statutes governing the situation do not seem to be the same as in other jurisdictions, we have found very little aid in construing them. However, they seem so plain as not to be difficult to find their meaning and we accordingly hold that defendant was entitled to ten peremptory challenges. *State* v. *Roberts,* 91 Utah 117, 63 Pac. (2d) 584, *State* v. *Yandell,* 201 Mo. 646, 100 S. W. 466, and *State* v. *Collins,* 53 Mont. 213, 163 Pac. 102, involve the right of peremptory challenges by defendants when the charge in the information or indictment also alleges previous convictions and all three, we think, sustain defendant's contention.

In the early case of *People* v. *Clough,* 59 Cal. 438, it was decided that a defendant charged with robbery, which was made punishable for not less than one year in the state prison, was not entitled to the peremptory challenges allowed a defendant when charged with a crime punishable by death or for life. The court reasoned that, since the maximum punishment for robbery was not specifically designated and the

minimum was, the offense was not punishable for life within the meaning of the statute allowing peremptory challenges. This construction of the statute of California was, we think, clearly wrong and the courts of that state, while following it, have indicated that if the question was an open one their decisions would be otherwise. *People* v. *Sullivan,* 132 Cal. 93, 64 Pac. 90; *People* v. *Logan,* 123 Cal. 414, 56 Pac. 56.

In some jurisdictions previous convictions are allowed to be shown after a defendant has been convicted for a later crime for the purpose of enhancing the punishment of his subsequent offense. The courts have held in such cases that the proceeding is collateral and supplementary, but that is not the case here. In *People* v. *Reese,* 258 N. Y. 89, 179 N. E. 305, 79 A. L. R. 1329, it was held, Justice CARDOZO announcing the opinion of the court, that no peremptory challenges were allowed in such supplementary or collateral proceedings. It is this line of cases the state cites to support its contention that defendant was not entitled to ten peremptory challenges.

The question is, was the error prejudicial. From the record it appears that a panel of twenty-four instead of twenty-nine jurors was called; that defendant objected to the number as insufficient to permit him and the state the peremptory challenges to which they were entitled under our law, and that the court ruled that defendant was entitled to only seven peremptory challenges. It further shows that the jurors were examined on their *voir dire* by the county attorney "collectively and passed" and by defendant's counsel "collectively and passed." Apparently neither side wanted to challenge any of the jurors for cause but seemed satisfied. It is reasonable to assume, we think, that if there had existed a cause for challenging any of the jurors the defendant would have exercised the right to get rid of them and not have left them in the panel

to exhaust his peremptory challenges on. The jury list shows that the state struck five jurors and the defendant seven, leaving a panel of twelve by which defendant was tried. The defendant used all of his peremptory challenges and it is probable he did so not to get any more favorable jury or a more fair and impartial one, but to clear the way for this appeal. As the court said in *State* v. *Roberts, supra* [91 Utah 117, 63 Pac. (2d) 589]:

" . . . He did not attempt to exercise any additional challenges, and there is no intimation that he was not satisfied with the jury as impaneled. His counsel merely announced to the court, after exercising his fourth challenge, 'we have a right to ten challenges if we want them.' After some discussion and argument with respect to the punishment pronounced by law for rape, the court said: 'The jury may be sworn,' and counsel for defendant noted an exception. There is no intimation here that defendant desired to or would have exercised any more challenges had the court ruled differently or that he did 'want them.' It was merely the abstract question of whether he had ten challenges if he wanted them that was put to the court without any intimation whatever that he wished to exercise any of them. Defendant was not obliged to exercise any of the challenges if he was satisfied with the jury as then made up. He had the right to waive any or all of his peremptory challenges. *State* v. *Aikers,* 87 Utah, 507, 51 Pac. (2d) 1052. As has been said: ' . . . there is but one way for a person on trial to show that he is prejudiced in such a situation, which is to seek to exercise his right—to exhaust his remedy.' *State* v. *Squier,* 56 Nev. 386, 54 Pac. (2d) 227, 232; *State* v. *Collins,* 53 Mont. 213, 163 Pac. 102."

The evidence of defendant's guilt is conclusive. If he had been privileged to handpick his jury, it is highly improbable the verdict would have been different. A new trial to go through the form of allowing defendant ten peremptory challenges, with no probability of a different result, we do not feel should be

granted. In *Conner* v. *State,* 54 Ariz. 68, 92 Pac. (2d) 524, 527, the reasoning of the court in upholding a conviction by a jury, one or more of whom should have been excused for cause upon a proper challenge but who were not challenged because their answers to questions on *voir dire* were inaccurate, seems conclusive that the error here should not require a reversal and a new trial. In that case, after referring to section 22, article VI of the state Constitution, which provides that "No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done," we said, in effect, that the laws concerning the formation of juries were intended to secure a fair and impartial jury and have no other purpose; that a disregard of formal provisions of the law, if a fair and impartial jury is secured, should not require a reversal, and that a defendant is not entitled to any particular jury but only to a fair and impartial one. What we said of the fact situation in that case is so apt to the situation here that we quote it:

"We have examined the transcript of evidence carefully and it appears from it that the defendant admitted the homicide and that it was committed in the perpetration of a robbery. His only excuse therefor was that he was acting to some extent under the influence of liquor and narcotic drugs, and that the fatal shot was fired in a scuffle with the deceased. Not one of the jurors who actually sat in the trial of the case was challenged for cause, and their examination, which appears in the reporter's transcript, shows that they were fully qualified. A defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial. All of the formal rules of law regarding the formation of a jury are intended to secure this kind of a jury, and have no other purpose. If the record shows affirmatively that such a jury was secured, even though some of the formal provisions of the law regarding the manner of their selection may

have been disregarded, and that the evidence fully and completely sustains their verdict, we think the provision of the Constitution above quoted applies.

"The record in this case showing affirmatively that the jury which tried the defendant was fair and impartial, and the evidence being conclusive as to his guilt of the crime wherewith he was charged, and it appearing that even if error did occur in the trial of the case it was not such as to affect the verdict in any manner, the judgment is affirmed."

The judgment of the lower court is affirmed.

LOCKWOOD and McALISTER, JJ., concur.